UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

INTERNATIONAL CONFECTION
COMPANY, LLC,

    Plaintiff,

v.

Case No. 2:18-cv-1108
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

Z CAPITAL GROUP, LLC, *et al.*,

    Defendants.

## OPINON AND ORDER

This matter is before the Court on Defendant Z Capital Group, LLC and Z Capital Partners, LLC's (collectively "Z Capital" or "Defendants") Motion to Dismiss under Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. (ECF No. 7). Defendants filed a memorandum in support of their motion (ECF No. 7-1). Plaintiff responded (ECF No. 13) and Defendants replied (ECF No. 14). As such, this matter is fully briefed and ripe for review. For the reasons that follow, Defendants' Motion (ECF No. 7) is **DENIED**.

**I.**

On September 25, 2018, International Confection Company, LLC ("ICC" or "Plaintiff") filed a one-count Complaint alleging that Defendants tortiously interfered with a contract between ICC and Mrs. Fields Franchising, LLC ("MFF"). (*See generally* Compl. [ECF No. 1]). Taking the facts alleged in the Complaint as true, the facts of this case are as follows.

On May 16, 2013, MFF, a nonparty in this action, and ICC entered into a License Agreement ("the Agreement") which provided that it was to be in effect until December 31, 2030.

(Compl. ¶ 8). ICC became a licensee of MFF by assignment of rights from the Maxfield Candy Company, which was the original licensee. Maxfield Candy Company is located in Salt Lake City, Utah. (*See* Maxfield Termination Agreement at 1 [ECF No. 1-1, Ex. C]).

Through the Agreement, MFF granted ICC the irrevocable and exclusive right to use certain MFF trademarks, trade names, service marks, and recipes to manufacture, market, and sell "Royalty Bearing Products" through "Designated Distribution Channels" throughout the "Territory." (Compl. ¶ 9). MFF had the right to buy Royalty Bearing Products from ICC at a most favored nations price for retail at MFF Cookies store locations owned and operated by MFF or its licensees or franchisees. (*Id.* ¶ 14).

The Agreement provided that MFF would retain quality control rights, including the right to approve products and any product packaging. (*Id.* ¶ 15). By exercising those rights, MFF required ICC to obtain approval for products and packaging prior to distribution. MFF agreed to send any required notices to ICC in Columbus, Ohio. (*Id.*). ICC sold Royalty Bearing Products in Ohio as well as other states, as required by the Agreement (*Id.* ¶ 17).

Defendants are asset management and private equity firms that invested in the entity that owns MFF. (*Id.* ¶ 18). Defendants directed MFF to terminate its licenses agreements with entities like ICC in 2014, irrespective of whether the licensees had defaulted. (*Id.*). At the time Defendants required MFF to dissolve its license agreements, Defendants knew of the existence of and the terms of MFF's license agreements. (*Id.*).

MFF also had a Consent to Collateral Assignment ("the Consent") to which ICC was a party and which required MFF to give an entity called Maxfield Candy Company notice of an opportunity to cure any alleged default by ICC. (*Id.* ¶ 20). Defendants also induced MFF to breach the Consent. (*Id.*).

2

Defendants were aware that ICC's business was expanding, and that ICC had a line of credit with TAB Bank. (*Id.* ¶ 21). After MFF terminated the Agreement at Defendants' direction, MFF falsely notified TAB Bank that ICC had defaulted under the Agreement, regardless of having no duty to do so. (*Id.*). Because of MFF's false notification, TAB Bank petitioned to have ICC taken into receivership in Utah. (*Id.*). A receivership proceeding was opened; and while ICC was able to resolve the receivership proceeding with TAB Bank, another ICC creditor called in its loan. (*Id.* ¶ 23). ICC had been managing its debt but was unable to afford to pay all its outstanding loan at one time. As such, the receiver put ICC's assets up for sale. (*Id.* ¶ 24). Mrs. Fields Confections, LLC, an affiliate of MFF, purchased ICC's assets through the receivership sale. (*Id.* ¶ 25). Thus, ICC alleges that as a result of Defendants' actions, ICC has lost substantial profits because of its inability to continue its business operations in Ohio. (*Id.* ¶ 26).

On September 25, 2018, Plaintiff commenced this current action with the filing of a one-count Complaint alleging that Defendants tortiously interfered with a contract. (*See generally id.*). Defendants now move to dismiss Plaintiff's Complaint arguing that dismissal is warranted for: 1) lack of personal jurisdiction; and 2) Plaintiff's failure to state a claim upon which relief can be granted. (*See generally* Def. Mem. in Supp. [ECF No. 7-1]). Plaintiff responded that the Court has personal jurisdiction over Defendants. (*See* Pl. Opp'n at 5–10 [ECF No. 13]). Alternatively, Plaintiff asks that if the Court finds that the record is insufficiently clear as to the whether it has personal jurisdiction over the Defendants, the Court allow limited discovery for jurisdictional purposes instead of dismissing the action. (*Id.* at 10–11). Plaintiff also submits that the allegations in the Complaint, taken as true, demonstrate that Plaintiff has stated a claim upon which relief can be granted. (*See id.* at 11–17).

3

## II. PERSONAL JURISDICTION

### A. 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal when a court lacks personal jurisdiction over a defendant. Plaintiff bears the burden of establishing personal jurisdiction. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). Where a Rule 12(b)(2) motion is decided solely on written submissions, the plaintiff's burden is "relatively slight"; the court must view all of the pleadings and affidavits in a light most favorable to the plaintiff, and to defeat dismissal, the plaintiff need only make a prima facie showing that personal jurisdiction exists. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *Shaker Constr. Grp. LLC v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *1 (S.D. Ohio Sept. 18, 2008). Indeed, as the Sixth Circuit has explained, a court disposing of a 12(b)(2) motion "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). The Sixth Circuit has adopted that approach "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Id.*

Federal courts apply the law of the forum state when deciding whether personal jurisdiction exists over a defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Thus, to find that it has personal jurisdiction over Defendants, the Court must determine first whether Defendants' actions meet the criteria of Ohio's long-arm statute, Ohio Rev. Code § 2307.382, and second, that the Court's jurisdictional exercise comports with the due process requirements of the United States Constitution. *CompuServe, Inc.*, 89 F.3d at 1262.

4

**B.     Discussion**

The parties agree, in principle, that Defendants are not subject to this Court's jurisdiction under a theory of "general" jurisdiction, which requires that "the defendant's contacts with the forum state [be] of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992). The parties instead argue whether the Court has "specific" jurisdiction, which "is exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.*; (*see* Mem. in Supp. at 6; Pl. Opp'n at 4–5).

**1.     Ohio Long-Arm Statute**

The Ohio long-arm statute, in pertinent part, is as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: . . .

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

Ohio Rev. Code § 2307.382(A)(6). Ohio courts broadly apply § 2307.382(A)(6). *Schneider v. Hardesty*, 669 F.3d 693, 700 (6th Cir. 2012). "Thus, to invoke personal jurisdiction under th[is] provision of the long-arm statute, 'it need only be shown that [defendant] * * * caused tortious injury in this state, and that [plaintiff's] cause of action arose from such * * * conduct.'" *Fern Exposition Servs., L.L.C. v. Lenhof*, 2014-Ohio-3246, at ¶ 14 (Ohio Ct. App. July 25, 2014) (quoting *Maui Toys v. Brown*, 2014-Ohio-583, at ¶ 44 (Ohio Ct. App. Feb. 13, 2014)).

ICC claims that Defendants tortiously interfered with its business. (*See* Compl. ¶¶ 27–32). Similarly, ICC asserts that Defendants reasonably should have known that inducing MFF to unlawfully breach the Agreement and the Consent would cause injury to ICC in the form of profit

5

loss. (*See* Pl. Opp'n at 8). Thus, construing the evidence in the light most favorable to ICC, the Court finds that ICC has alleged conduct that brings its claim within the reach of Ohio's long-arm statute.

### 2. Due Process

As the Ohio long-arm statute "does not extend to the constitutional limits of the Due Process Clause," *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), the Court now turns to whether exercising personal jurisdiction over Defendants comports with due process requirements.

The Sixth Circuit set out a three-part test to make this determination in *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach. Co.*, 401 F.2d at 381. "Second, the cause of action must arise from the defendant's activities there." *Id.* And third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.*

#### a. Purposeful Availment

"'Purposeful availment' is 'the constitutional touchstone of personal jurisdiction,' and it exists 'where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State . . . and where the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.'" *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F3d 883, 889 (6th Cir. 2002)). This

6

requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person[.]" *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985). "[A] nonresident who deliberately engages in 'significant activities within a State' or creates 'continuing obligations between himself and residents of the forum' satisfies this requirement." *AlixPartners*, 836 F.3d at 550 (quoting *Burger King*, 471 U.S. at 475–76).

In its Complaint, Plaintiff submits:

> This Court has personal jurisdiction over the defendants. The License Agreement with which defendants tortuously [sic] interfered was with International Confections (an Ohio LLC), and required International Confections to sell products in a territory that included Ohio. Defendants intentionally caused contractual and tortious injury in Ohio.

(Compl. ¶ 6). Defendants, relying on the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), assert that the "there is no allegation that Defendants purposefully directed any activity at Ohio and [the Complaint] alleges only that [the Defendants] were, at most, aware that a resident of Ohio would be among those impacted by the direction to terminate certain contracts, an action that is not alleged to have been directed at Plaintiff." (Def. Mem. in Supp. at 8–9). Plaintiff responded:

> Using the "effects test," the focal point of the damage caused by defendants' tortious interference was felt in Ohio, and—as alleged in the Complaint—defendants were aware of the License Agreement and potential damage to International Confections. International Confections has plead [sic] facts sufficient to find that both defendants purposely directed activities at a resident of Ohio that caused consequences in Ohio and that defendants therefore should have reasonably foreseen that they could be sued here.

(Pl. Opp'n at 7–8). Defendant replied that "the only contacts with Ohio that Plaintiff is able to identify are its own contacts, not any contacts at all by Defendants." (Reply at 9 [ECF No. 14]).

The following facts, laid out in the Complaint, are relevant to the Court's inquiry as to

7

whether Defendants have purposefully availed themselves to jurisdiction in Ohio: 1) MFF had a License Agreement with ICC, an Ohio company with its headquarters in Columbus, Ohio, (Compl. ¶ 8); 2) ICC's License Agreement required it to manufacture, market and sell confections throughout the United States, including Ohio, (*Id.* ¶¶ 9, 12); 3) "[D]efendants directed [MFF] to terminate its license agreements with entities like [ICC]" and Defendants further directed MFF to terminate a Consent Collateral Assignment in which ICC was a party, (*Id.* ¶¶ 18, 20); and 4) at the direction of Defendants, MFF sent a Notice of Termination to ICC's office in Columbus, Ohio. (*Id.* ¶ 19).

These contacts are of sufficient quality to support the conclusion that Defendants purposefully availed themselves to jurisdiction in Ohio. *See e.g., Calphalon*, 228 F.3d at 722–23 (noting that it is the *quality* of the defendant's contacts with the forum state and the *quality* of the parties' relationship that are the foci of the purposeful availment analysis not the quantity of contacts or the duration of the relationship). Thus, Plaintiff has met the purposeful availment prong of the due process analysis.

### b. Connection to the Cause of Action

Under the second *Southern Machine* requirement, a plaintiff's "cause of action must arise from the defendant's activities there." *Southern Machine Co.*, 401 F.2d at 381. However, as the Sixth Circuit explained in *Southern Machine*, "the second criterion does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, *have a substantial connection with* the defendant's in-state activities.'" *Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Southern Machine*, 401 F.2d at 384 n.27). "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of

8

action does not arise from that [contact]." *Southern Machine*, 401 F.2d at 384 n.29.

Here, the cause of action against Defendants is sufficiently connected to their in-state activities. Plaintiff alleges that Defendants directed MFF to: terminate its License Agreement and Consent Collateral Assignment with the Ohio-based Plaintiff; and send of notice of such terminations to Plaintiff's Columbus office. (*See* Compl. ¶¶ 18–20). As such, it cannot reasonably be said that the operative facts that give rise to Plaintiff's claim are not related to Defendants' contacts with Ohio.

### c. Reasonableness

A defendant's actions, or the consequences caused by a defendant's actions, "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine*, 401 F.2d at 381. This final criterion of the *Southern Machine* test "looks to the extent of the forum state's interest and whether exertion of jurisdiction over the particular defendant is fair." *First Nat'l Bank v. J.W. Brewer Tire co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). "When the first two elements [of the *Southern Machine* test] are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Id.* When considering the reasonableness of exercising personal jurisdiction over a non-resident defendant, courts typically consider: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

The four factors outlined above demonstrate that the Court's exercise of jurisdiction over Defendants is reasonable. Defendants are not Ohio residents and while Defendants would be burdened by defending a lawsuit in Ohio, the Sixth Circuit has "deemed specific jurisdiction to be

proper even when a defendant would be compelled to travel." *Intera Corp.*, 428 F.3d at 618. Ohio has a strong interest in safeguarding Plaintiff's legal options over the alleged tortious interference with an Ohio company's contract. Additionally, Plaintiff has a strong interest in obtaining relief for Defendants' purported tortious interference with Plaintiff's contract with MFF. Thus, exercising personal jurisdiction over Defendants comports with constitutional due process requirements and Defendants' Motion to Dismiss for lack of personal jurisdiction is **DENIED**.

### III. FAILURE TO STATE A CLAIM

#### A. 12(b)(6) Standard

Federal Rule of Civil Procedure 12 authorizes dismissal of a suit or claim for "failure to state claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To meet this standard, the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion to dismiss, the court construes the complaint in the light most favorable to the non-moving party, accepting as true all of plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

Nonetheless, a court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Further, "the

10

tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 662. As such, while a plaintiff is not required to set forth detailed factual allegations at the pleading stage, the complaint must contain a basis upon which relief can be granted; a recitation of facts intimating the "mere possibility of misconduct" will not suffice." *See id.* at 679; Fed. R. Civ. P. 8(a).

**B.     Discussion**

Plaintiff's Complaint contains one-count, alleging the tortious interference with a contract. Defendant avers that dismissal of Plaintiff's Complaint under Rule 12(b)(6) is proper for two reasons: 1) Plaintiff's claim is barred by a contractual release; and 2) Plaintiff failed to state a claim under the governing law. (*See* Mot. to Dismiss at 10–18). The Court will address each argument in turn.

   **1.     Contractual Release**

      **a.     Documents not part of Plaintiff's Complaint**

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Under a well-established exception to Rule 12(d), courts may consider documents attached to a Rule 12(b)(6) or 12(c) motion without converting either into a summary-judgment motion if the attached materials are: (i) 'referred to in the plaintiff's complaint and are central to [the] claims' or (ii) 'matters of public record.' *Kassem v. Ocwen Loan Servicing, LLC*, 704 F. App'x 429, 432 (6th Cir. 2017) (quoting *McLaughlin v CNS Gas Co., LLC*, 639 F. App'x 296, 298–99 (6th Cir. 2016); *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)).

11

Attached to Defendants' Motion to Dismiss are two exhibits: "Exhibit Z-1" is an Order Granting the Expedited Motion for Sale of Receivership Assets and Approving the Sale of the Assets Free and Clear of all Encumbrances issued by the Honorable Paul B. Parker of the Third District Court for the State of Utah (*See* Utah Op. & Ord. [ECF No. 7-2]); and "Exhibit Z-2: is an Asset Purchase Agreement ("Purchase Agreement") between MFF and Kent Goates (*See* Purchase Agreement [ECF No. 7-3]).

Defendant submits that the Court can consider the exhibits attached to their Motion to Dismiss without converting it into a motion for summary judgment:

> This Court may consider the Purchase Agreement that contains the operative release without converting this Rule 12(b)(6) motion to one for summary judgment because the Complaint refers to the Purchase Agreement at Paragraph 25, the Utah state court in the receivership action adopted the Purchase Agreement and attached it as Exhibit A to its Order, which was affirmed by the Utah Supreme Court, and the Utah Supreme Court's decision discussed the Purchase Agreement and quoted the operative language from the release.

(Def. Mem. in Supp. at 10–11 [footnotes omitted]) (citing *Weiner v. Klais & Co., Inc.* 108 F.3d 86, 89 (6th Cir. 1997); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Plaintiff opposes Defendants' submission that the Court may review these documents without converting Defendants' Motion to Dismiss to one for summary judgment. (*See* Pl. Opp'n at 11–13). First, Plaintiff counters that Paragraph 25 "is hardly a 'reference' to a specific document such as the Purchase Agreement, which is a prerequisite to the Court properly considering such a document that was not attached to the Complaint." (*Id.* at 11). "Second," Plaintiff argues, "even if the Complaint did reference the Purchase Agreement to the extent required for the exception to apply, the Purchase Agreement is not 'central' to International Confections' claims." (*Id.* at 12).

While Plaintiff correctly asserts that the mere reference to a document in the pleadings does not make such a document "central" to a plaintiff's claims, the Purchase Agreement is attached to

the Utah State Court Opinion, as such, the Purchase Agreement fits within the second "well-established" exception to Rule 12(d). Plaintiff's responsive briefing is silent as to why consideration of such public records would be improper when deciding a Rule 12 motion. Accordingly, as both exhibits are matters of public record, the Court may consider the two exhibits Defendants have attached to their Motion to Dismiss without converting this Rule 12 Motion into a motion for summary judgment.

### b. Analysis

"A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 50 Ohio St. 3d 10, 552 N.E.2d 207, 210 (Ohio 1990). Courts are to strictly construe contractual releases. *See Ansley v. Cooke*, No. 1:17-cv-271, 2017 WL 3872481, at *3 (S.D. Ohio Sept. 5, 2017) (applying Ohio law).

The pertinent portion of the Purchase Agreement states:

> Release of Claims. Effective upon the Closing of the sale that is the subject of this Agreement, Seller [ICC] on his own behalf and on behalf of the Companies waives and releases any and all claims he or the Companies may have against the Buyer and its employees, officers, directors, members, affiliates, and agents except for claims arising under this Agreement.

(Purchase Agreement Art. II § 2.06).

Defendants claim:

> [T]he direct release of Mrs. Fields Confections alone precludes [ICC's] claim: because Mrs. Fields Confections was released from its contractual obligations before there had been any asserted claim of breach, it means that Mrs. Fields Confections cannot ever be found to have breached its contract and, therefore, that there can be no liability for tortiously inducing a breach.

(Reply at 5 n. 9; *see also* Def. Mem. in Supp. at 12 n. 18). Further, Defendants assert that Utah law, which governs the Purchase Agreement, defines "affiliates" to mean "a person that directly or indirectly through one or more intermediaries controls, or is controlled by, or is under common

13

control with, the person specified." (Def. Mem. in Supp. at 12); *see also* Utah Code Ann. § 16-10a-102.

Plaintiff responds that "[r]elease is an affirmative defense for which the defendants bear the burden of proof[,]" as such, "defendants' motion should still be denied." (Pl. Opp'n at 13) (citing *Wysocki v. IMB*, 607 F.3d 1102, 1108 n. 3 (6th Cir. 2010)). Plaintiff continues that it is presently unclear whether Defendants are affiliates of Mrs. Fields Confections because

> the Asset Purchase Agreement does not define the term "affiliate" and while defendants cite Utah Code Ann. § 16-10a-102(2), that statute defines the term "affiliate" only for purposes of that chapter of the Utah Code. *See* Utah Code Ann. [§] 16-10a-102, preamble (specifying that definitions apply to terms "[a]s used in this chapter"). Nothing in the Purchase Agreement purports to adopt this definition.

(*Id.*). Further, Plaintiff submits that even if § 16-10a-102 of the Utah Code applies, "Mrs. Fields *Franchising's* unlawful termination of its license agreement with [Plaintiff] at defendants' inducement does not prove . . . that defendants and Mrs. Fields *Confections* are 'affiliates' under the Act." (*Id.*) (emphasis in original).

Here, the Purchase Agreement does not define the term "affiliate," so the Court declines to define it at this stage in the proceeding. Defendants argument that the Court should apply the definition of the term codified in Utah Ann. Code § 16-10a-102 is unpersuasive. The Purchase Agreement is silent as to whether that section of the Utah Code is applicable, accordingly it would be improper, at this stage in the litigation, to apply that definition of "affiliate" to the Purchase Agreement. Defendants' second argument, that the ordinary meaning of "affiliate" dictates that Defendants are affiliates of Mrs. Fields Confections, is equally unpersuasive. It is presently unclear whether Defendants and Mrs. Fields Confections are affiliates of one another. Accordingly, the Court does not presently find that the contractual release in the Purchase Agreement bars Plaintiff's claim against Defendants.

14

### 2. Failure to State a Claim

Finally, the Court turns to the last matter in Defendants' Motion to Dismiss: that Plaintiff has failed to state a claim upon which relief can be granted. The parties appear to dispute whether Utah or Ohio law controls Plaintiff's claim. (*See* Def. Mem. in Supp. at 13-14; Pl. Opp'n at 14 n. 2). But both parties fail to undergo a choice-of-law analysis; Defendants claim such an analysis is unnecessary as the Plaintiff fails to state a claim under both states' laws, while Plaintiff contends a choice-of-law analysis is presently unwarranted as it has stated a plausible claim of tortious interference with contract under both Ohio and Utah law. (*See* Def. Mem. in Supp. at 14; Pl. Opp'n at 14). The Court agrees that such analysis is not needed at this time as Plaintiff has sufficiently pleaded its claim under both Utah and Ohio law.

#### a. Utah law

The essential elements of a tortious interference with contract claim in Utah are: "(1) the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Eldridge v. Jondrow*, 2015 UT 21, ¶ 13, 345 P.3d 553 (Utah 2015). In their Motion to Dismiss, Defendants only argue that Plaintiff has failed to properly plead the improper means element; thus, the Court need not discuss whether the first or third element of a tortious interference claim under Utah law has been properly pleaded. (*See* Def. Mem. in Supp. at 13–15).

Under Utah law, to allege a plausible claim for tortious interference with a contract, the plaintiff must show "some proof that the alleged interference was done with some level of impropriety." *C.R. England v. Swift Trans. Co.*, 2019 UT 8, at ¶ 16, 437 P.3d 343 (Utah 2019). To satisfy the improper means element, the plaintiff must demonstrate that "a defendant employs a means that is independently tortious or wrong." *Id.* at ¶ 45 (footnote omitted). To establish this

15

independent wrongdoing, a plaintiff must show that the means used by the defendant "to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations or recognized common-law rules." *Id.* at ¶ 3 (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982), *overruled on other grounds by Eldridge v. Johndrow*, 345 P.3d 553 (Utah 2015)) (internal quotations omitted). "Examples of improper means include 'violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, [a] disparaging falsehood,' or actions that 'violate an established standard of a trade or profession.'" *Big Squid, Inc. v. Domo, Inc.*, No. 2:19-cv-193, 2019 WL 3555509, at *9 (D. Utah Aug. 5, 2019) ("[A] deliberate breach of contract," however, "even where employed to secure economic advantage, is not, by itself, an 'improper means.'") (quoting *C.R. England*, 2019 UT 8, at ¶ 42, n. 74)).

Defendants submit that Plaintiff has failed to plead the improper means element because "ICC here alleges on that Defendants 'instructed' or 'directed' Mrs. Fields to terminate licenses." (Def. Mem. in Supp. at 15) (citing Compl. ¶¶ 1, 18). In support of this assertion, Defendant relies on *Jones v. Trevor Mktg., Inc. v. Lowry*, 233 P.3d 538 (Utah App. May 6, 2010) and *Arms Trucking Co. v. Braun*, 2014-Ohio-5077 (Ohio App. Nov. 17, 2014). (*Id.* at 15). Plaintiff submits that the Complaint sufficiently alleges the improper means element. (Pl. Opp'n at 17). Specifically, Plaintiff avers that "[t]erminating or causing the termination of a License Agreement based on false allegations of default violates the most basic standards of any trade or profession and potentially even may be considered a disparaging falsehood." (*Id.*). In their Reply, Defendants submits there are two flaws in Plaintiff's argument: 1) Plaintiff has not alleged that Defendants made these "false allegations of default"; and 2) even assuming that Plaintiff has alleged that Defendants made such false allegations, Plaintiff have failed to allege that such allegations induced

Mrs. Field's breach. (Reply at 14).

The following paragraphs of the Complaint are relevant to the Court's inquiry as to whether Plaintiff has properly pleaded that Defendants used improper means to procure Mrs. Field's breach:

> 1. This case arises out of the defendants' tortious interference with a lucrative contract between [Plaintiff] and [MFF]. [MFF] granted [Plaintiff] a seventeen-year license to create, market, and distribute certain types of dessert products under the Mrs. Fields brand. In the second year of that agreement, defendants, investors in a separate, unaffiliated entity that owns [MFF], induced [MFF] to terminate the license agreement by instructing Mrs. Fields to falsely declare default. . . .
>
> * * *
>
> 18. . . . In 2014, defendants directed [MFF] to terminate its license agreements with entities like [Plaintiff], regardless of whether the licensees were in default. Defendants knew of Mrs. Fields Franchising's license agreements and their terms, including the License Agreement with [Plaintiff.]
>
> 19. At defendants' direction, and despite the fact that [Plaintiff's] had not defaulted, [MFF] sent a "Notice of Termination" to [Plaintiff's] Columbus office on or around September 26, 2014. Because [Plaintiff] was not in default, [MFF] had no right to terminate the license agreement. This termination was unlawful.
>
> 20. Defendants' direction also induced [MFF] to breach a Consent to Collateral Assignment to which [Plaintiff] was a party. . . . This Consent required [MFF] to give an entity called Maxfield Candy Company notice of and opportunity to cure any alleged default by [Plaintiff]. [MFF] breached the Consent as well.

(Compl. ¶¶ 1, 18–20). Plaintiff has sufficiently alleged the improper means element. One could reasonably infer that by instructing MFF to falsely claim Plaintiff to be in default, Defendants violated an industry standard.[1]

---

[1] The Court is not holding that such is an industry standard, at this time. *See C.R. England*, 2019 UT 8, at ¶ 48 (stating that "the existence of an objective industry-wide standard may be established in the same way it is established in the negligence context (through expert testimony regarding industry-wide customs or practices, uniforms codes, industry-specific regulations, etc.)") (citation omitted). Rather, the Court merely finds that the Complaint sufficiently pleads the "improper means" element so to survive a Rule 12 motion.

17

### b. Ohio law

To successfully plead an Ohio tortious interference with contract claim, "a plaintiff must establish (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Long v. Mount Carmel Health Sys.*, 2017-Ohio-5522, at ¶ 26, 93 N.E.23d 436 (Ohio App. June 27, 2017) (citing *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, ¶ 1 of the syllabus, 707 N.E.2d 853 (Ohio 1999). Here, Defendants appear only to dispute whether Plaintiff has properly pleaded the fourth element. (*See* Def. Mem. in Supp. at 16–18). To establish this element, there must be "proof that the defendant's interference with another's contract was improper." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, ¶ 2 of the syllabus. "Thus, even if an actor's interference with another's contract causes damages to be suffered, that interference does not constitute a tort if the interference is justified." *Id.* at 176. To determine whether interference was "improper," Ohio courts are directed to consider the factors laid out in § 767 of the Restatement of the Law 2d, Torts.[2] *Id.* at ¶ 3 of the syllabus. The burden is on the plaintiff to prove that the defendant lacked justification to interfere with the contract. *Long*, 2017-Ohio-5522, at ¶ 27 (citing *Columbia Dev. Corp. v. Krohn*, 2014-Ohio-5607, at ¶ 25 (Ohio App. Dec. 19, 2014)).

Defendants assert that Plaintiff has failed to properly plead the "lack of justification" element because Plaintiff has not pleaded that Defendants acted with malice, as they contend is necessary. (*See* Def. Mem. in Supp. at 16–17). Plaintiff submits that it has properly pleaded the

---

[2] Those factors are: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties."

"lack of justification" element as Defendants conflates Plaintiff's tortious interference with contract claim with a claim for breach of contract. (*See* Pl. Opp'n at 14–16). Plaintiff further advances that "the focus when considering [Plaintiff's] tort claim is on *defendants' actions*, not the entity that breached the tort." (*Id.*). And Plaintiff submits that it has adequately pleaded that Defendants intentionally and improperly interfered with ICC's contract with MFF. (*Id.*).

Plaintiff has sufficiently alleged that Defendants lacked justification for their alleged interference with Plaintiff's and MFF's contract. As discussed *supra*, Paragraphs 1, 18, 19, and 20 of the Complaint allege sufficient facts so that one can reasonably infer that Defendants, without justification, directed MFF to terminate its contract with Plaintiff. Defendants' argument that "Plaintiff has alleged only that Defendants . . . caused [MFF] to breach a contract[,]" (Reply at 15), is unpersuasive. Under the liberal pleading standard, Plaintiff has alleged sufficient facts in support of its tortious interference claim against Defendants under both Ohio and Utah law.

## IV.

For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 7) is **DENIED**.

**IT IS SO ORDERED.**

9-17-2019
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE